UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LAWRENCE ABELA,

|  |  |  |
|---|---|---|
| | Petitioner, | Case No. 1:15-cv-12633 |
| | | Hon. Thomas L. Ludington |
| v. | | |
| DANIEL HEYNS, | | |
| | Respondent. | |

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,
DENYING CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO
APPEAL IN FORMA PAUPERIS**

Petitioner, Lawrence Abela, is currently on parole after serving a sentence of 2½ to 15 years for his Oakland Circuit Court jury trial convictions of third-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520d(1)(c), and fourth-degree criminal sexual conduct. MICH. COMP. LAWS § 750.520e(1)(c). He has filed this habeas corpus petition pursuant to 28 U.S.C. § 2254.

Petitioner's application for habeas relief, ECF No. 1, consists of a 205-page maze of fragmented arguments. Petitioner's supplemental amended petition, his reply brief, and its multiple amendments, ECF No. 5 at 14–19, do not add clarity. Petitioner enumerates seventeen claims at one point in his pleading, but the argument headings for those claims are difficult to parse. ECF No. 1 at Page ID 70-77. Petitioner has filed thirteen motions to amend since his habeas petition was filed. Five of those motions have been granted. However, on January 24, 2017, the Court denied Petitioner's six pending motions to amend, explaining that further amendments would only delay resolution of the claims and obscure the legal issues. ECF No. 27. Since that order, Petitioner has filed four "letters" which appear to be attempts to further amend

his briefing. ECF Nos. 28, 29, 30, 31. Petitioner has had ample opportunity to fully explain his arguments, and the four letters filed in the past few weeks do not make any new arguments. Because Petitioner's claims are, for the reasons stated below, insufficient to justify habeas relief, his most recent attempts to amend his briefing will not be individually addressed.

Prisoner pro se pleadings are given the benefit of liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). There are limits, however, and a federal court is not required to construct legal arguments for a pro se petitioner. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). The Court will therefore interpret the petition to be raising the claims that Petitioner fairly presented to the state courts on direct appeal: (1) Insufficient evidence was presented to support Petitioner's convictions; (2) the prosecutor's expert witnesses were not qualified to offer expert testimony; (3) the trial court erroneously denied Petitioner's motion to adjourn the case to allow Petitioner to obtain substitute counsel; (4) the trial court erroneously denied Petitioner's motion to have the victim undergo a physical and psychological examination; (5) the trial court erred in failing to apply the "tender years" exception to the hearsay rule; (6) the trial court erroneously admitted evidence regarding Petitioner's bad character from the victim's mother; (7) the trial court erred by questioning the victim prior to her testimony; (8) the composition of the jury was unconstitutional; (9) the trial court erred in failing to rule on Petitioner's eve-of-trial pro se discovery motions; (10) the prosecutor committed misconduct; (11) the jury instructions were erroneous; (12) the trial court erroneously allowed the officer in charge to remain in the courtroom during trial; (13) the trial court erroneously excluded evidence that the victim made prior sexual assault accusations; (14) trial counsel provided ineffective assistance; (15) Petitioner was illegally arrested, and there were defects in his arraignment, preliminary examination, and bind-over, divesting the trial court of jurisdiction; (16) cumulative errors rendered Petitioner's

- 2 -

trial unfair; and (17) the trial court improperly denied Petitioner's pro se motion for new trial on grounds of untimeliness.[1]

The petition is denied because none of Petitioner's claims merit relief. Petitioner will also be denied a certificate of appealability and permission to proceed on appeal in forma pauperis.

## I.

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant was convicted of engaging in acts of digital penetration and sexual contact with the adult, mentally disabled daughter of his former girlfriend, with whom he lived. The victim's mother ended her relationship with defendant in May 2010, but allowed defendant to continue residing with her and the victim until defendant found a new place to live.
>
> The prosecution presented evidence that the victim's mother became more forceful in her efforts to make defendant leave her apartment. Following an argument at a restaurant on July 8, 2010, the group returned to the victim's mother's apartment and defendant instructed the victim's mother to do some laundry. The victim testified at trial that after returning from dinner with defendant and her mother, defendant pulled her into her mother's bedroom while her mother was downstairs doing the laundry. The victim stated that defendant touched her "who," which is another name for her vagina, and her butt, and that defendant put his finger inside her vagina. After defendant left the apartment the next morning, the victim told her mother that defendant had touched her in "wrong places." The victim also reported defendant's conduct to a certified nursing assistant, Phyllis Armstead, who was assisting the victim with life skills. The victim's mother testified that she instructed defendant to leave her apartment, but delayed making a report to the police for a few days. The defense theory at trial was that the victim's mental disability made her susceptible to suggestibility by her mother and others, and that the victim's mother influenced the victim into

---

[1] To the extent Petitioner is attempting to raise additional or different claims than these, such claims cannot form the basis for granting habeas relief because they were not exhausted in the state courts. See 28 U.S.C. § 2254(b). Furthermore, the Court deems any such arguments to be waived due to Petitioner's inadequate presentation. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir. 1997).

accusing defendant of sexual assault because she wanted defendant out of her apartment. Defense counsel presented an expert witness to support this theory.

*People v. Abela*, No. 307768, 2013 WL 5576155, at *1 (Mich. Ct. App. Oct. 10, 2013).

Following his conviction and sentence as indicated above, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His retained appellate counsel raised four claims:

I. Was Defendant convicted based on insufficient evidence in violation of his due process rights where the evidence demonstrated that the Complainant was not "mentally incapable" under the statute because she testified that she understood what was happening and did not consent to the sexual acts?

II. Whether the trial court abused its discretion in admitting the testimony of the prosecution expert where his testimony did not satisfy the standards for expert testimony in Michigan, thus violating Mr. Abela's due process rights. Whether trial counsel was ineffective for failing to object to the expert and his testimony.

III. Whether the trial court violated Mr. Abela's due process rights by refusing to grant a reasonable adjournment of trial so that Mr. Abela could retain defense trial counsel of choice.

IV. Was Defendant denied his constitutional right to present a defense and confront the witnesses against him by the trial court's erroneous decisions to deny a psychological examination of the Complainant. Trial counsel was ineffective for failing to request the physical examination.

After his appellate counsel filed the brief on appeal, Petitioner discharged him. Appellate counsel then successfully moved to withdraw from representing Petitioner on appeal. Petitioner subsequently filed a pro se supplemental brief raising numerous issues as outlined above. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. The opinion addressed all the issues raised in both Petitioner's former counsel's brief on appeal and in Petitioner's pro se brief. *Abela*, 2013 WL 5576155.

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, appearing to seek review of all the claims he raised in the Michigan Court of Appeals. The

Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed." *People v. Abela*, 849 N.W.2d 362 (Mich. 2014) (table).

## II.

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was

- 5 -

so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

## III.

## A.

Petitioner's first claim challenges the sufficiency of the evidence presented at trial to sustain his convictions. Petitioner challenges the sufficiency of the evidence regarding whether the victim was "mentally incapable" and therefore unable to consent to sexual conduct. Petitioner also asserts that insufficient evidence was presented to show that a sexual penetration occurred. Both claims lack merit.

A "daunting, doubly deferential standard of review" applies to a sufficiency-of-the-evidence inquiry on habeas review. *Keys v. Booker*, 798 F.3d 442, 450 (6th Cir. 2015). First, a reviewing court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Second, even if the reviewing court concludes that a rational trier of fact could not have found the petitioner guilty beyond a reasonable doubt, it "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

With respect to Petitioner's first challenge, under Michigan law a person is "mentally incapable" of consenting to sexual contact if she has "a mental disease or defect that renders [her] temporarily or permanently incapable of appraising the nature of . . . [her] conduct." MICH. COMP. LAWS § 750.520a(I). This element requires an assessment of the person's ability to

- 6 -

understand the physical act and to appreciate nonphysical factors, such as the moral quality of the act. *People v. Breck*, 230 Mich App 450, 455 (1998).

There was substantial evidence presented at trial indicating that the victim was "mentally incapable" of consenting to sexual contact, and therefore the Michigan Court of Appeals rejection of this claim was reasonable. Phyllis Armstead testified that she was employed by the State of Michigan as a certified nursing assistant. ECF No. 13-9 at 120. She received training in dealing with people with special needs. *Id.* at 121. Armstead worked with the victim, Erika Zelmon, and her family for two and one-half years. *Id.* at 122. She assisted Erika with things like hygiene and meal preparation, and she would take Erika on goal-oriented outings. *Id.* These would include such things as taking her to a parking lot and teaching her how to look both ways, teaching her to be aware of her surroundings, and teaching her to wear a seatbelt when riding in a car. *Id.* at 121–122.

Ms. Armstead's schedule with Erika was five days a week for four hours a day, and eight to ten hours on Saturdays. *Id.* at 123. According to Ms. Armstead, Erika was like an eight to ten year-old child. *Id.* at 124. She was not able to live by herself and she was not able to care for herself. *Id.* Erika could not count money well, she could not prepare a meal without assistance, and she needed assistance crossing the street. *Id.* at 126.

Dr. Jackson Edwin Turner testified that he was employed at Michigan Behavioral Medicine as a staff psychologist. ECF No. 13-10 at 77. One of his duties was to perform psychological assessments on children and adults, as well as individuals with special needs. *Id.* Dr. Turner performed several hundred psychological assessments, and was certified by the State of Michigan. *Id.* at 78. Erika was referred to Dr. Turner by her mother and Sgt. Zupic of the Madison Heights Police Department for an evaluation of her mental ability level. *Id.* at 79.

- 7 -

According to Dr. Turner, Erika presented herself in a childlike manner, her vocabulary was limited, and the concepts that she used were less than what would be expected of a 22-year-old woman. *Id.* at 81. The result of her Wechsler Adult Intelligence Scale test was a 53, which meant that she was significantly impaired. *Id.* at 82. Dr. Turner opined that her ability to understand the consequences of a sexual act was significantly impaired. *Id.* at 83. She was operating on the level of an eleven or twelve-year-old child. *Id.* Her ability to understand social meanings and social relationships was impaired, as was her ability to reason through a full range of consequences. *Id.* at 84. According to Dr. Turner, Erika had difficulty with interpersonal relationships in that she did not have the cognitive abilities to fully appreciate the meanings and the consequences of events. *Id.* at 87.

The defense called Gabriella Ahlstrom, Erika's psychotherapist, as a witness. *Id.* at 100. Ms. Ahlstrom saw Erika for therapy four times starting in July of 2010. *Id.* Ms. Ahlstrom testified that her informal conclusion, pending formal and objective testing, was that Erika's mental age was similar to a five-to-eight year old child. *Id.* at 103. She based her assessment of Erika's mental age on her language, what she liked to play and the words that she used to express her emotions. *Id.* at 107.

The testimony of these witnesses, viewed most favorably to the prosecution, more than sufficed to support a finding beyond a reasonable doubt that the victim was "mentally incapable" of consenting to sexual contact.

With respect to Petitioner's second challenge to the sufficiency of the evidence, "sexual penetration" is defined under Michigan law as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not

required." MICH. COMP. LAWS § 750.520a(r). It is sufficient that there be penetration of the labia majora. *People v. Bristol*, 115 Mich App 236, 238 (1981).

At trial, after the trial court asked her some questions about the importance of telling the truth, Erika Zelmon promised that she would tell the truth. ECF No. 13-9, at 134–137. She testified that she was twenty-three years old but she did not know when her birthday was. *Id.* at 137. She knew Petitioner because he was her mother's boyfriend. *Id.* at 138.

Erika testified that in July 2010, Petitioner made her feel uncomfortable when he pulled her into her mother's room and touched her in "wrong places." *Id.* at 139. She described "the wrong places" as her "who" and her "butt." *Id.* at 140. Erika testified that her "who" was her vagina. *Id.* Erika testified that Petitioner digitally penetrated her vagina and anus.  *Id.* at 141–43. According to Erika, Petitioner did this while her mother was downstairs doing laundry. *Id.* at 144. She later told her mother and Phyllis what happened. *Id.* at 144–145. On cross-examination, defense counsel revealed inconsistencies in Ericka's accounts of the assault, and she admitted that she initially told the police officer that Petitioner did not penetrate her. But she maintained at trial that Petitioner digitally penetrated her.

Petitioner asserts that due to Erika's mental impairment and considering her inconsistent statements and a lack of physical evidence, a rationale fact-finder could not conclude beyond a reasonable doubt that she was sexually penetrated. Attacks on witness credibility are, however, simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell*, 280 F. 3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000). Petitioner's first habeas claim is therefore without merit.

**B.**

Petitioner next asserts that the prosecutor's expert witnesses were not properly qualified to offer expert testimony regarding the victim's mental ability. Although Abela does not specifically identify the expert who he is asserting was unqualified, Abela appears to have challenged the testimony of Dr. Turner, a clinical psychologist, on appeal. At trial, Abela's counsel did not object to Dr. Turner's qualifications. *Abela*, 2013 WL 5576155 at *5. On appeal, Abela argued that Dr. Turner did not apply principles and methods reliably to the facts of the case, in violation of Michigan Rule of Evidence 702. The Michigan Court of Appeals explained that Dr. Turner provided testimony regarding Erika's mental ability level, including her IQ. As the court noted, Erika's IQ was probative of the question of whether she was mentally incapable of providing sexual consent. *Id.* Because "the significance of a particular IQ level is outside the common knowledge of a jury," the Michigan court held that expert testimony was properly heard on that point. *Id.* Importantly, the Michigan court noted that Dr. Turner did not opine on whether Erika actually was mentally incapable of providing consent at the time of the acts in question. *Id.* Rather, Dr. Turner only testified regarding whether Erika was mentally incapable in the abstract.

This claim does raise a cognizable issue. Violations of state law and procedure that do not infringe on specific federal constitutional protections are not cognizable on federal-habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Accordingly, most claims involving whether evidence is admissible under state law are not cognizable on habeas review. *See Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000). "A violation of state law is not cognizable in federal habeas corpus unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008) (citations omitted).

Although Petitioner couches his challenge to the expert witness's qualifications in constitutional terms, it is really an evidentiary claim regarding the state trial court's application of Michigan Rules of Evidence 702, 703, and 705, which govern the admission of expert testimony in Michigan trials. "To the extent that any testimony and comments violated Michigan's rules of evidence, such errors are not cognizable on federal habeas review," *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009), because "[a] federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Petitioner's second claim does not provide a basis for granting habeas relief.

## C.

Petitioner's third claim asserts that the trial court erroneously denied his motion to adjourn to allow him to obtain new counsel on the day trial was to begin. This claim was reasonably rejected by the Michigan Court of Appeals. The Sixth Circuit explained in *Franklin v. Bradshaw*, 695 F.3d 439 (6th Cir. 2012), that trial courts are granted broad discretion on matters of continuances. *See also Morris v. Slappy*, 461 U.S. 1, 11 (1983). "The denial of a defendant's motion for a continuance amounts to a constitutional violation only if there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *United States v. King*, 127 F.3d 483, 486-87 (6th Cir. 1997) (internal quotation marks omitted). *See also Morris*, 461 U.S. at 11–12. The defendant must demonstrate that the denial of the continuance resulted in actual prejudice to his defense." *King*, 127 F.3d at 487 (internal quotation marks omitted). "The defendant demonstrates 'actual prejudice' by showing that a continuance would have made relevant witnesses available or added something to the defense." *Id.*

Here, the state appellate court reasonably concluded that Petitioner failed to demonstrate actual prejudice. The dispute resulted from defense counsel's alleged failure to follow

Petitioner's instructions to request additional pretrial discovery and to file a motion to require the victim to submit to a physical examination. The state trial court concluded that it would not have granted the motion had it been brought. Accordingly, a continuance would not have added anything to Petitioner's defense.

Petitioner asserts that additional facts relevant to this claim were lost when portions of the pretrial proceedings held on October 21, 2011, were not recorded or somehow merged into the October 24, 2011, transcript. The Michigan Court of Appeals found that Petitioner failed to overcome the presumption that the transcripts were accurate. *Abela*, 2013 WL 5576155, at *9. This finding of fact is presumed correct on habeas review. See 28 U.S.C. § 2254(e). Petitioner has not provided clear and convincing evidence to show that the state court's factual findings as to the accuracy of the transcripts was false. This claim does not merit habeas relief.

### D.

Petitioner next asserts that the trial court erroneously denied his request to have the victim undergo a psychological and physical examination. Prior to trial, Petitioner's trial counsel requested an order allowing a defense expert, potentially Dr. Kathleen Okla, to conduct an independent evaluation of the victim. ECF No. 13-7 at 6. The defense asserted that an examination was required to determine the susceptibility of the victim to suggestion. *Id.* at 7. The trial court expressed concern that the proposed examination would not only potentially re-victimize the victim, but also that there were confidentiality issues. *Id.* at 12.

The trial court's decision not to require an independent examination of a victim is a discovery ruling based on state law, limiting habeas review to a determination of whether the denial "'offend[ed] . . . some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006)

(quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)). Habeas relief may be granted on this issue only if the trial court's discovery ruling was so egregious that it resulted in a denial of fundamental fairness. *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004).

A defendant certainly has a basic right "to defend himself against the charges the state has brought against him." *Giles*, 449 F.3d at 704. But that right must be balanced against the state's "compelling" interest in protecting victims of sex crimes from further trauma and embarrassment. *United States v. Weekley*, 130 F.3d 747, 753 (6th Cir. 1997) (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982)). The Supreme Court has held that in child sex abuse cases, "a State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." *Giles*, 449 F.3d at 704 (quoting *Maryland v. Craig*, 497 U.S. 836, 853 (1990)). There is no principled distinction between a State's interest in protecting child victims from further trauma and embarrassment and the interest in protecting mentally disabled adult victims from the same harm.

Moreover, Petitioner wished to have the victim examined to determine her susceptibility to suggestion so that an opinion could be given on her credibility. But under state law, "[a]n expert cannot be used as a human lie detector to give a stamp of scientific legitimacy to the truth or falsity of a witness' testimony." *People v. Graham*, 173 Mich. App. 473, 478 (1988). *See also People v. Peterson*, 450 Mich. 349, 352 (1995) (explaining that an expert may not provide testimony regarding whether sexual abuse occurred or the victim's credibility). Accordingly, Petitioner was not deprived of the opportunity to present any defense evidence at trial. The claim is without merit.

- 13 -

Petitioner's claim that the trial court erroneously denied his motion to have the victim undergo a physical examination fails for the same reason. As the Michigan Court of Appeals found, the third-degree criminal sexual conduct charge was based on an allegation of digital penetration, and Petitioner failed to make any showing that a physical examination would have been probative of whether an act of digital penetration was committed. It was not fundamentally unfair to deny Petitioner's motion for a physical examination of the victim given the nature of the allegations. *Baze*, 371 F.3d at 324.

### E.

Petitioner claims that the trial court erred in failing to apply the "tender years" exception to the hearsay rule to statements made by the victim. The admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding. *See Byrd v. Tessmer*, 82 Fed. App'x. 147, 150 (6th Cir. 2003). *See also Cathron v. Jones*, 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002) (holding that petitioner's claim that state court erred in admitting hearsay testimony under state evidentiary rule governing declarations against penal interest was not cognizable in federal habeas review where the claim alleged a violation of state law, not a violation of federal constitutional rights).

### F.

Petitioner argues that the trial court erroneously admitted evidence regarding Petitioner's bad character during the victim's mother's testimony. The mother testified that Petitioner was in a  poor financial situation and that is why she allowed him to stay in her home after she ended her relationship with him.

First, the evidence in question was not admitted to attack Petitioner's character. Rather, it was provided to explain why Petitioner was still in the victim's home at the time of the assault.

- 14 -

But even to the extent that the evidence painted Petitioner as a "bad person," its admission did not implicate Petitioner's federal constitutional rights. See *Bey v. Bagley*, 500 F 3d 514, 519 (6th Cir. 2007); *Estelle*, 502 U.S. at 72 (holding that the Supreme Court's habeas powers did not permit the Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law). There is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting adverse character evidence. *See Bugh v. Mitchell*, 329 F. 3d 496, 512 (6th Cir. 2003). Petitioner is not entitled to habeas relief on this claim.

## G.

Petitioner asserts that the trial court erred by questioning the victim prior to her testimony.

As found by the Michigan Court of Appeals, however, the questioning was proper under Michigan Rule of Evidence 601 to determine the victim's competency as a witness. To the extent that Petitioner contends that the trial court erred in finding the victim competent to testify, he cannot demonstrate entitlement to habeas relief on such a claim. Petitioner does not identify any Supreme Court case that prevents a trial court from examining a witness to determine their competence. Thus, the trial court's use of Rule 601 cannot form the basis for granting the writ of habeas corpus. *See Adams v. Smith*, 280 F. Supp. 2d 704, 715 (E.D. Mich. 2003).

Moreover, the preliminary questioning and finding of competence did not indicate any bias or partiality by the trial judge. "[T]he Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–905 (1997) (internal and end

- 15 -

citation omitted). "Trial judges have a wide latitude in conducting trials, but they must carefully preserve an attitude of impartiality and scrupulously avoid giving the jury an impression that the judge believes the defendant is guilty." *Harrington v. Iowa*, 109 F.3d 1275, 1280 (8th Cir. 1997) (quotation marks and citations omitted). None of the complained-of remarks or rulings indicated any bias on the part of the trial judge.

Similarly, the trial court's comments in denying Petitioner's motion to quash the information do not demonstrate any bias. Petitioner must point to comments that show favoritism or antagonism to establish judicial bias. *See Liteky v. United States*, 510 U.S. 540, 555 (1994). Indeed, "expressions of impatience, dissatisfaction, annoyance, and even anger" are insufficient to show bias. *Id.* at 555–56. Petitioner has failed to demonstrate entitlement to habeas relief with respect to this claim.

## H.

Petitioner raises various fragmented claims challenging the composition of the jury. All of these arguments were rejected by the Michigan Court of Appeals on the grounds that any alleged irregularities were waived when Petitioner's counsel expressed satisfaction with the jury. *Abela*, No. 307768, 2013 WL 5576155, at *12–13.

When state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless a petitioner can demonstrate: (1) "cause" for the default and actual prejudice as a result of the alleged constitutional violation; or (2) can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, the court need not reach the issue of prejudice. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

- 16 -

For the actual prejudice inquiry, a habeas court must look to the record to determine if there is a reasonable probability that a different (i.e. properly selected) jury would have reached a different result. See *Garcia-Dorantes v. Warren*, 801 F.3d 584, 596–597 (6th Cir. 2015); *Ambrose v. Booker*, 684 F.3d 638, 652 (6th Cir. 2012).

Petitioner proffered no evidence either to the state courts or to this Court that the composition of the jury in his case or the dismissal of jurors for cause had any impact on the outcome of the trial. Accordingly, review of this claim is barred by Petitioner's failure to raise the challenge at trial and his failure to demonstrate that his counsel's failure to preserve the claim resulted in actual prejudice.

## I.

Petitioner asserts that the trial court erred in failing to rule on his pro se pretrial motions aimed at compelling the victim to undergo testing, and when it was denied, to fire his counsel. ECF No. 13-9 at 3–5. The request was made on the first morning of trial. The trial court indicated that the "motion should not have been filed, nor would it have been granted." *Id.* at 5. The court indicated that "there has been nothing but good lawyering going on behalf of the defendant" and that Petitioner "could go to trial this morning with Mr. Flynn, you could go to trial this morning representing yourself, you could have somebody ready to go to trial, other than Mr. Flynn, as a lawyer, but today is the date of trial and we are moving forward." *Id.* at 5–6. Petitioner then asked his attorney to withdraw, but he did not request to represent himself. *Id.* at 6.

With respect to the motion for discovery, the claim is without merit because Petitioner was represented by counsel, and he had no right to raise issues on his own in addition to proceeding with counsel. "Although criminal defendants possess a constitutional right to be

- 17 -

heard and to defend themselves," an individual "has no right to hybrid representation, that is, a right 'to be heard both in person and by attorney.'" *Moniz v. McKee*, No. 05-71699, 2007 U.S. Dist. LEXIS 70720 at *9, (E.D. Mich. Sept. 25, 2007) (citing *Crane v. Kentucky*, 476 U.S. 683 (1986)); *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) (quoting *United States v. Foster*, 9 F.R.D. 367, 372 (S.D.N.Y. 1949)). *See also* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel.") This claim is without merit.

With respect to the follow-on request to fire his attorney, Petitioner was not forced to make a choice "between unprepared counsel and self-representation." *James v. Brigano*, 470 F.3d 636, 644 (6th Cir. 2006). Petitioner never requested to represent himself, and the record demonstrates that his counsel was well-prepared and competent to conduct a defense. Moreover, the request was an untimely one that evidenced nothing more than Petitioner's frustration that he could not compel the victim to undergo the physical and psychological testing. "[T]he right to retain counsel of one's choosing is not absolute, and where a continuance is sought to retain or replace counsel, the right to select counsel must be carefully balanced against the public's interest in the orderly administration of justice." *Linton v. Perini*, 656 F.2d 207, 209 (6th Cir. 1981). The trial court acted properly in denying Petitioner's untimely request to fire his attorney. The claim is without merit.

## J.

Petitioner raises claims of prosecutorial misconduct, the specific factual predicates of which are fragmented and unclear. To be entitled to habeas relief on a prosecutorial misconduct claim, the petitioner must show that the prosecutor's conduct so infected the trial so as to render the conviction fundamentally unfair. *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012); *Gillard*

*v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). If the misconduct was harmless, then as a matter of law, there was no due-process violation. See *Greer v. Miller*, 483 U.S. 756, 765 & n.7 (1987). In federal habeas, this means asking whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637–38 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). *See also Fry v. Pliler*, 551 U.S. 112, 121–22 (2007).

Here, contrary to Petitioner's allegations, the record does not indicate that the prosecutor's charging decision was unconstitutional or illegal. Rather, it appears that charges were filed in the normal course of a criminal investigation after the victim came forward with allegations that she was sexually assaulted. Petitioner's claims that the prosecutor withheld Turner's evaluation of the victim's competency from defense counsel is also unfounded, and it was rejected as untrue by the Michigan Court of Appeals. *Abela*, 2013 WL 5576155, at *13. Petitioner has not proffered any evidence to rebut this factual determination.

Likewise there was no impropriety in the prosecutor's voir dire of the jurors. The prosecutor properly discussed the concept of "beyond a reasonable doubt" during jury selection to ascertain a prospective juror's ability to serve. Finally, the prosecutor's comments during opening statements and closing arguments were properly based on the evidence and reasonable inferences that could be drawn from the evidence. *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir.1999). Petitioner's claims of prosecutorial misconduct are without merit.

### K.

Petitioner asserts that the jury was improperly instructed regarding competency to consent to sexual contact, the evaluation of expert testimony, and missing witnesses. None of these allegations have merit. Typically, a claim that a trial court gave an improper jury

- 19 -

instruction is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). *See also Estelle,* 502 U.S. at 75 (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same).

Petitioner misunderstands the relationship between the victim's competency to testify and her capability to consent to sexual contact. The former, as discussed above, is an issue for the trial court to determine the admissibility of a witness's testimony, and the latter is a question for the jury as one of the elements of the charged offense. The record indicates that the jury was fairly instructed with respect to its duty to decide both the victim's credibility and the "mentally incapable" element of the charged offenses. Nor has Petitioner established any deficiency in the jury instructions with respect to expert testimony. Lastly, the trial court's instruction that the victim's testimony, if believed, could alone be used to prove the charged offenses, was a correct statement of Michigan law. *See* MICH. COMP. LAWS § 750.520h. The Michigan Court of Appeals found that the jury instructions were proper under state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

## L.

Petitioner asserts that it was error for the trial court to allow the officer in charge of the case to remain in the courtroom during trial because he did not testify. This claim is frivolous. "[I]f there is no 'clearly established Federal law, as determined by the Supreme Court' that supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(1)). Petitioner cites no Supreme

- 20 -

Court authority standing for the proposition that a non-testifying police officer who was in charge of the investigation, and who was seated at the prosecution table to assist the prosecutor, should have been excluded from the courtroom during trial.

## M.

Petitioner asserts that the trial court erroneously excluded evidence that the victim made prior accusations of sexual assault. This claim also borders on the frivolous. Under Michigan law, a defendant who seeks to admit a prior *false* sexual abuse allegation must make a sufficient offer of proof, including a demonstration that the accusation was false. See *People v. Adamski*, 198 Mich. App. 133 (1993) (citing *People v. Hackett*, 421 Mich. 338 (1984)). Petitioner provided neither this Court nor the Michigan courts with any affidavits or documentary evidence to establish that the victim made false sexual abuse allegations in the past. Conclusory allegations without any evidentiary support do not provide a basis for habeas relief. See *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Petitioner has failed to demonstrate that his counsel was ineffective for failing to pursue this issue at trial for the same reason. *Id.* There is simply no basis on which to conclude that the victim made prior false accusations of sexual abuse.

## N.

Petitioner claims that his defense attorney provided ineffective assistance of counsel at trial. He asserts that his attorney failed to call defense witnesses and present an alibi defense. Furthermore, throughout his pleadings, Petitioner asserts that his counsel was ineffective for failing to raise or preserve the issues discussed elsewhere in this opinion.

To establish ineffective assistance of counsel, a defendant must show both that: (1) counsel's performance was deficient, i.e., "that counsel's representation fell below an objective standard of reasonableness"; and (2) the deficient performance resulted in prejudice to the

defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

None of Petitioner's claims of ineffective assistance have merit. Petitioner's allegations of failure to call witnesses and present an alibi defense instead of arguing that the accusations were fabricated to get Petitioner out of the victim's home are wholly conclusory. "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 689). Petitioner has not identified any factual support for his claim that additional witnesses could have provided a substantial defense. While it is true that defense counsel conceded that Petitioner was in the victim's home during the relevant time period, the concession does not amount to deficient performance. As the Michigan Court of Appeals aptly concluded, "it was not unreasonable for defense counsel to concede that defendant resided with the victim and her mother. Indeed, it was part of the defense strategy to argue that the victim's mother prompted the victim's allegations in order to remove defendant from her house." *Abela*, No. 307768, 2013 WL 5576155, at *15. The rejection of the claim on this basis was reasonable.

Petitioner claims that his counsel was ineffective for his inaction during jury selection. The Michigan Court of Appeals rejected the claim, holding that Petitioner had not "overcome the

presumption that defense counsel's decisions involving the selection of jurors were sound decisions based on reasonable professional judgment." *Abela*, 2013 WL 5576155, at *12. The Court's review of the record does not reveal any actions or failings by trial counsel that fell below an objective level of competence with respect to this claim.

Petitioner asserts that he was deprived of the effective assistance of counsel because his defense attorney did not move for a judgment of acquittal and because he failed to preserve the issues discussed elsewhere in this opinion. Because the underlying claims are without merit, Petitioner's counsel was not ineffective for failing to raise them at trial. *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) (explaining that counsel is not ineffective for failing to raise a claim that lacks merit).

## O.

Petitioner claims that he was illegally arrested. Such claims are barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976). *See also McQueen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims). In *Stone*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Id*. *See also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

In order for the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court

deems the state-court determination of the claim to have been in error. *Id.* at 824; *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001). The Michigan Court of Appeals addressed and rejected Petitioner's illegal arrest claim on the merits. *Abela*, No. 307768, 2013 WL 5576155, at *15–16. Review of this claim is therefore barred.

Petitioner also asserts there were defects in the charging documents and errors at his arraignment. Even if this were so, it would not provide a basis for habeas relief. Although "a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). Therefore, regardless of whether the charging documents in Petitioner's case were defective or the state district court magistrate lacked probable cause to order his arrest and detention, Petitioner is not entitled to have his convictions vacated as the result of any such irregularities.

Petitioner also asserts that errors occurred at the preliminary examination, invalidating the bind-over to the trial court. He claims that the errors were omitted from the transcripts. Again, even if the allegations were proven to be true, Petitioner would not be entitled to relief. No constitutional right to a preliminary examination exists. *Gerstein*, 420 U.S. at 119. Although, the Fourth Amendment required a timely judicial determination of probable cause prior to detention, "an illegal arrest or detention does not void a subsequent conviction." *Id.*

Furthermore, the determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts. *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976). *See also Daniel v. McQuiggin*, 678 F.Supp. 2d 547, 553 (E.D. Mich. 2009). The Sixth Circuit has noted that "[a] state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review."

- 24 -

*Strunk v. Martin*, 27 Fed. App'x. 473, 475 (6th Cir. 2001). Petitioner's claim that the trial court lacked jurisdiction to try his case because of errors in the arrest, charging documents, preliminary examination,  bind-over, and arraignment raise non-cognizable questions on federal habeas review.

### P.

Petitioner asserts that the cumulative effect of the alleged errors rendered Petitioner's trial unfair. The Sixth Circuit has held, however, that "constitutional errors that would not individually support habeas relief can[not] be cumulated to support habeas relief." *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). Even if the Court did consider the alleged errors cumulatively, Petitioner's claim would fail because of the substantial amount of evidence of his guilt admitted at trial. Accordingly, Petitioner is not entitled to habeas relief on the grounds of cumulative error. *Id.*

### Q.

Finally, Petitioner claims that it was improper for the trial court to deny his pro se motion for new trial on grounds of untimeliness. This claim is based on a misapprehension of state procedural law. Contrary to Petitioner's assertions, the state trial court's jurisdiction to entertain post-judgment motions during the pendency of an appeal was subject to the limitations of Michigan Court Rule 7.208. Because Rule 7.208(A) limits a trial court's authority to set aside or amend the judgment or order appealed during the pendency of an appeal, and because the limited period of concurrent jurisdiction prescribed in MCR 7.208(B) had expired, the trial court properly concluded that it lacked jurisdiction to consider defendant's post-judgment motion for a new trial. The Michigan Court of Appeals affirmed that decision, and this Court will not second-guess this interpretation of state procedural law. *Abela*, No. 307768, 2013 WL 5576155, at *17.

**IV.**

Federal Rule of Appellate Procedure 22 provides that an appeal of this decision may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on the merits of the claims presented, a certificate may issue if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that Petitioner's claims do not merit relief. Therefore, the Court denies a certificate of appealability. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal cannot be taken in good faith. 28 U.S.C. § 1915(a)(3).

**V.**

Accordingly, it is **ORDERED**, that the petition for a writ of habeas corpus, ECF No. 1, is **DENIED**.

It is further **ORDERED**, that a certificate of appealability and permission to appeal in forma pauris are **DENIED**.

Dated: March 1, 2017                                    s/Thomas L. Ludington
                                                        THOMAS L. LUDINGTON
                                                        United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 1, 2017.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager